**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:14CV-00059-HBB**

**JUSTIN WAYNE COONEY**                                                               **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                                **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Justin Wayne Cooney ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 13, 14) and Defendant (DN 19) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11).  By Order entered September 4, 2014 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

FINDINGS OF FACT

On March 4, 2013, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits (Tr. 12, 217-223, 224-230, 258). Plaintiff alleged that he became disabled on May 18, 2012, as a result of bipolar disorder, stomach ulcers, ulcerative colitis, depression, heart problems, and Attention Deficit Hyperactivity Disorder (ADHD) (Tr. 12, 217, 224, 257, 262, 263). Administrative Law Judge Kevin R. Martin ("ALJ") conducted a hearing on January 9, 2014, in Evansville, Indiana (Tr. 12, 29-31). Plaintiff was present and represented by attorney Austin P. Vowels (Tr. 12, 29-31). Also present and testifying was Lisa A. Courtney, an impartial vocational expert (Tr. 12, 29-31).

In a decision dated January 28, 2014, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 10-22). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 18, 2012, the alleged onset date (Tr. 14). At the second step, the ALJ determined that Plaintiff's history of ulcerative colitis; bipolar disorder; panic disorder; post-traumatic stress disorder; and ADHD are "severe" impairments within the meaning of the regulations (Tr. 15). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 15).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of medium work because he may understand, remember, and carry out simple instructions in work settings requiring no more than occasional interaction with supervisors and coworkers and no more than incidental interaction with the public (Tr. 17). Further, the ALJ found Plaintiff has no past relevant work (Tr. 21).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 21-22). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 21-22). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from May 18, 2012 through January 28, 2014, the date of the decision (Tr. 22).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 7). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).

CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20

C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695

4

(quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff disagrees with Finding No. 3 (DN 14, Fact and Law Summary; DN 13, Memorandum at Page 11). This finding addresses the second step in the sequential evaluation process.

At the second step in the sequential evaluation process a claimant must demonstrate he has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy this burden, the claimant must show he suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement (20 C.F.R. §§ 404.1509, 416.909) and "significantly limits" his ability to do one or more basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs, 880 F.2d at 863. To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment. 20 C.F.R. § 416.908; Social Security Ruling 96-4p, 1996 WL 374187, *1; Social Security Ruling 96-3p, 1996 WL 374181, *2. Thus, symptoms and subjective complaints alone are not sufficient to establish the existence of a "medically determinable" physical or mental impairment. Social Security Ruling 96-4p, 1996 WL 374187, *1.

In Finding No. 3 the ALJ concluded that Plaintiff "has the following severe impairments: History of ulcerative colitis; bipolar disorder; panic disorder; post-traumatic stress disorder; and

attention-deficit hyperactivity disorder by history…" (Tr. 15). Plaintiff disagrees with Finding No. 3 because he believes "the ALJ failed to mention: tremors, agoraphobia, depression, and severe psychosocial stressors" (DN 13, Memorandum at Page 11). However, Plaintiff does not explain why each of these three conditions is a medically determinable impairment that significantly limits his ability to do one or more basic work activities (Id.). Thus, Plaintiff has not provided an argument in support of his position. It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); see also Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion). Therefore, Plaintiff's claim regarding Finding No. 3 is deemed waived.

Next, Plaintiff disagrees with Finding No. 4 (DN 14, Fact and Law Summary; DN 13, Memorandum at Pages 7-16). Finding No. 4 addresses the third step in the sequential evaluation process (Tr. 15).

At the third step, a claimant has the burden of demonstrating he has an impairment that meets or medically equals a listing in Appendix 1. See, 20 C.F.R. §§ 404.1520(d), 416.920(d); Burgess v. Sec'y of Health & Human Servs., 835 F.2d 139, 140 (6th Cir. 1987). To meet a listing in Appendix 1, the medical records regarding the impairment must satisfy both the diagnosis and severity requirements for the listing. Social Security Ruling 96-5p; 20 C.F.R. §§ 404.1525(d), 416.925(d); Hale v. Sec'y of Health & Human Serv's., 816 F.2d 1078, 1083 (6th Cir. 1984). If the impairment does not meet the severity requirements of a listing, then the Administrative Law Judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying

6

medical expert for guidance on the issue of whether the medical findings are at least equal in severity and duration to the listing findings. 20 C.F.R. §§ 404.1526(a) and (b), 416.926(a) and (b); Social Security Ruling 96-5p; Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986). Since a finding that a claimant meets or equals a listing is dispositive of the case, the finding is reserved to the Administrative Law Judge. Social Security Ruling 96-5p.

Here, the ALJ concluded Plaintiff's bipolar disorder did not satisfy the "paragraph B" or "paragraph C" criteria for listing 12.04 (Tr. 15-16). The undersigned will first address Plaintiff's argument that he satisfies the "paragraph B" criteria for listing 12.04.

The ALJ observed that to satisfy the "paragraph B" criteria the mental impairment must result in at least two of the following:

> [M]arked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

(Tr. 15). This is an accurate summation of how the Commissioner uses the four criteria in paragraph B to assess the severity of functional limitations imposed by a mental impairment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C.

Plaintiff asserts he has demonstrated "marked" restrictions in activities of daily living because he cannot drive, he occasionally needs help getting out of bed and dressing, he needs help on the toilet, and he cannot stand to be in public (DN 13, Memorandum at Pages 10, 12-13).

Further, Plaintiff contends the ALJ failed to consider his statements about vomiting almost daily, his typically needing help getting out of bed, and the debilitating nature of his agoraphobia (Id. at Page 13).

In making these arguments, Plaintiff overlooks the fact that his statements about symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings that show the existence of medical impairments that could reasonably be expected to give rise to the symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ appropriately applied the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), to assess the credibility of Plaintiff's subjective statements about his symptoms (Tr. 17-19).

First, the ALJ confirmed there was objective medical evidence with regard to the medical conditions (Tr. 14-20). Then the ALJ determined the objectively established physical and mental conditions were not of such severity that they could reasonably be expected to produce the degree of limitation alleged by Plaintiff (Tr. 19). Because Plaintiff's subjective complaints regarding his symptoms suggested impairments of greater severity than could be shown by objective medical evidence, the ALJ appropriately considered other information and factors that may be relevant to the symptoms alleged (Tr. 17-20). 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For example, the ALJ considered Plaintiff's level of daily activity as a factor in determining the extent to which the symptoms are of disabling severity (Tr. 15-19). 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990). Additionally, the ALJ considered the frequency that Plaintiff sought treatment for the allegedly disabling conditions (Tr. 15-19). 20 C.F.R. §§ 404.1529(c)(3)(v) and 416.929(c)(3)(v). The ALJ also considered whether there are

any inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's statements and the rest of the evidence in the record (Tr. 15-19). 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Further, the ALJ considered the medications used to alleviate Plaintiff's symptoms (Tr. 15-20). 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer symptoms to the extent he testified (Tr. 15-20). In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's credibility. Since tolerance of symptoms is a highly individualized matter, and a determination of disability based on symptoms depends, of necessity, largely on the credibility of the Plaintiff, the conclusion of the ALJ, who had the opportunity to observe the Plaintiff's demeanor, "should not be discharged lightly." Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that the ALJ's findings discounting the credibility of Plaintiff's subjective complaints are supported by substantial evidence and fully comport with applicable law, including the regulations for evaluating medical opinions and symptoms. See 20 C.F.R. §§ 404.1519a-p, 404.1527, 404.1529, 416.919a-p, 416.927, 4416.929.

The ALJ made the following findings with regard to Plaintiff's activities of daily living:

> In activities of daily living, the claimant has mild restriction. The claimant occasionally walks the family dog (Exhibit 9E at 3), makes simple meals for himself, and takes trash out (Exhibit 9E at 4), although he indicated his ability to handle money has deteriorated (Exhibit 9E at 6) and his wife now handles the family finances (Exhibit 5E at 10). The claimant testified that he has not driven in six months, although he has worked sporadically and looked for work since his alleged onset date (Exhibit 3D, Hearing testimony), and his wife indicated that the claimant was capable of driving (Exhibit 4E at 5), though she also testified at the hearing that he does not drive any more (Hearing testimony).

9

(Tr. 15). In light of the ALJ's findings regarding the credibility of Plaintiff's symptoms, the above findings regarding the degree of restriction to Plaintiff's activities of daily living are supported by substantial evidence in the record, including the opinions of both non-examining state agency psychologists (Tr. 15, 17-20, 74, 89, 108, 124).

Next, Plaintiff claims he has marked restrictions in social functioning because he cannot stand to be in public, he cannot get along with people, he has no social interaction outside of his immediate family, and he was fired from his last two jobs due to conflicts with other employees/supervisors (DN 13, Memorandum at Pages 10-11, 13-15). Plaintiff also faults the ALJ for focusing on the consultative psychological examiner's observations that he exhibited normal social judgment and a cooperative attitude (Id.). Plaintiff asserts just because he showed these traits during the examination does not mean he will exhibit them in the workplace (Id.). Plaintiff believes the ALJ should have focused on the examiner's opinion that he had a current Global Assessment of Functioning ("GAF") of 35 to 40 and his highest GAF for the year was 45 (Id.). Plaintiff contends the difficulties identified by the ALJ should have been classified as marked (Id.).

Again, the ALJ's findings regarding the credibility of Plaintiff's subjective complaints about his symptoms are an important facet to this analysis. Further, the ALJ discounted the GAF ratings and limitations expressed by the consultative psychological examiner, Ms. Walpert, because they appeared to be based on Plaintiff's less than accurate subjective statements rather than objective findings during the mental status examination (Tr. 19, 20). The ALJ made the following findings regarding Plaintiff's level of social functioning:

> In social functioning, the claimant has moderate difficulties. The claimant does not attend church or belong to social organizations, although he testified that he listens to the church sermons by

> telephone (Hearing testimony). The claimant's wife testified that he has mood swings where the claimant will have sudden, uncontrolled spikes of anger (Hearing testimony). However, during a consultative psychological examination on May 20, 2013, the claimant exhibited normal social judgment and cooperative attitude (Exhibit 8F at 2-3), and the claimant reported that he generally gets along well with authority figures (Exhibit 9F at 8). One of the claimant's former supervisors at Penn Station indicated the claimant had difficulty understanding or accepting when criticized or corrected for behavior or attitude issues, and that the claimant was often disruptive in the workplace regarding issues that were not the claimant's responsibility (Exhibit 17E).

(Tr. 16). In light of the ALJ's findings regarding the credibility of Plaintiff's symptoms, the above findings regarding the degree of restriction to Plaintiff's social functioning are supported by substantial evidence in the record, including the opinions of both non-examining state agency psychologists (Tr. 15, 17-20, 74, 89, 108, 124).

Next, Plaintiff claims he has marked restrictions in concentration, persistence or pace because he has been diagnosed with ADHD by nearly every physician who has seen him; he has testified that he cannot focus on activities he used to find enjoyable; and his last boss indicated he got flustered in rush situations on the job (DN 13, Memorandum at Pages 11, 15-16). There is no dispute that Plaintiff has been diagnosed with ADHD. The issue is the severity of Plaintiff's ADHD. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("[t]he mere diagnosis of [an impairment] … says nothing about the severity of the condition"). The ALJ found the objectively established mental conditions were not of such severity that they could reasonably be expected to produce the degree of limitation alleged by Plaintiff (Tr. 19). Moreover, the ALJ discounted the credibility of Plaintiff's subjective complaints regarding the degree of limitation imposed by his

mental impairments. The ALJ made the following findings regarding Plaintiff's concentration, persistence, or pace:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant reported that he does not follow written directions well, needs repetition of verbal instructions (Exhibit 9E at 7), and needs reminders to take medication, although he does not need to be reminded to handle personal care (Exhibit 9E at 4). During a consultative psychological examination of the claimant on May 20, 2013, the claimant was able to repeat five digits forwards and three digits backwards, remember one of three words correctly after a five-minute delay, and answer three out of seven mathematical problems correctly (Exhibit 8F at 2-3). He also declined to attempt serial 7s (Exhibit 8F at 3).

(Tr. 16). In light of the ALJ's findings regarding the credibility of Plaintiff's symptoms, the above findings regarding the degree of restriction to Plaintiff's concentration, persistence, or pace are supported with substantial evidence in the record, including the opinions of both non-examining state agency psychologists (Tr. 15, 17-20, 74, 89, 108, 124).

Finally, Plaintiff alleges he has experienced "repeated episodes of decompensation, each of extended duration, most recently his current state of not being able to drive and staying in his house, away from the public, all of the time" (DN 13, Memorandum at Pages 11, 16). Yet the ALJ noted Plaintiff has had "little mental health treatment and even medication prescribed by his primary care provider has been sporadic at best" (Tr. 19). Thus, in assessing whether Plaintiff experienced repeated episodes of decompensation, each of extended duration, the ALJ appropriately considered whether there were medical records showing a significant alteration in medication or "the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household) …" 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(C)(4). The ALJ concluded the evidence did not establish significant

alterations in medication or the existence of a highly structured/supportive living environment within Plaintiff's home (Tr. 16-17). Further, the ALJ discounted Plaintiff's subjective complaints regarding the degree of limitation caused by his mental impairments. The ALJ made the following finding with regard to episodes of decompensation:

> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

(Tr. 15-16). In light of the ALJ's findings regarding the credibility of Plaintiff's symptoms, the above findings regarding episodes of decompensation are supported with substantial evidence in the record, including the opinions of both non-examining state agency psychologists (Tr. 15, 17-20, 74, 89, 108, 124).

In sum, the ALJ made a thorough review of the record and concluded "[b]ecause the claimant's mental impairments do not cause two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied" (Tr. 16). This finding is supported by substantial evidence in the record and comports with applicable law.

Alternatively, Plaintiff asserts that he satisfies the paragraph C criteria for listing 12.04 because "[h]e was diagnosed with anxiety and depression as far back as at least 2011 and bipolar as far back as at least 2012" (DN 13, Memorandum at Page 9). Plaintiff claims:

> Said disorders have caused more than minimal limitations on his ability to do basic work activity with symptoms or signs of episodes of decompensation for extended durations, disease process that results in decompensation with even marginal changes in his environment, and a history of a year or more of inability to function outsides [sic] a highly supportive living arrangement.

13

(DN 13, Memorandum at Page 9). In support of this position, Plaintiff asserts he hardly leaves his home because he cannot stand people and he has been to the hospital multiple times due to panic attacks (DN 13, Memorandum at Page 9). Additionally, Plaintiff contends he does minimal cooking and needs his wife with him when he is shopping because he often becomes disturbed while in a store (DN 13, Memorandum at Page 9). Finally, Plaintiff contends that his mother, grandmother, and wife care for him (DN 13, Memorandum at Page 9).

Again, the ALJ discounted the credibility of Plaintiff's subjective statements regarding the degree of limitation imposed by his mental impairment. Further, the ALJ made the following findings related to the issue of whether Plaintiff met the "paragraph C" criteria:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. To satisfy the "paragraph C" criteria for listing 12.04, the mental impairment must result in repeated episodes of decompensation (each of extended duration), a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or current history of at least one year's inability to function outside a highly supportive living arrangement with a continued need for such an arrangement. To satisfy the "paragraph C" criteria of listing 12.06, the impairments must result in a complete inability to function independently outside the area of one's home.
>
> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant has not experienced any episodes of decompensation of extended duration, the claimant shows no indications that minimal increases in mental demands or environmental changes would cause such decompensation, and the claimant neither lives in a highly supportive living environment, nor has he demonstrated an inability to function independently outside his home. Specifically, a highly supportive living environment is typically associated with conditions similar to those found in a hospital, halfway house, or board and care facility. Although such structured environments may be found within an individual's

> private home, the evidence in this case does not establish this level of highly supportive structure within the claimant's home environment.

(Tr. 16). The ALJ's findings are supported by substantial evidence in the record and fully comport with applicable law. In sum, there is no merit to Plaintiff's challenge to Finding No. 4.

Next, Plaintiff disagrees with Finding No. 5 (DN 13, Memorandum at Pages 16-18; DN 14, Fact and Law Summary). This finding sets forth the ALJ's residual functional capacity assessment (Tr. 17).

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

Plaintiff argues substantial evidence does not support the ALJ's finding that Plaintiff has the residual functional capacity to "perform medium work … except [he] may understand, remember, and carry out simple instructions in work settings requiring no more than occasional interaction with supervisors and coworkers and no more than incidental interaction with the public" (DN 13, Memorandum at Pages 16-17; quoting Tr. 17). Plaintiff argues due to his lack of medical insurance and an inability to pay for medical treatment it was inappropriate for the ALJ to

consider his lack of medical treatment in making the residual functional capacity assessment (DN 13, Memorandum at Page 17). Further, Plaintiff believes the diagnoses expressed by the treating sources corroborate his disability (Id.). Additionally, Plaintiff points out the only consultative mental health evaluator in the record, Ms. Walpert, MA., found him totally disabled (Id.). Moreover, Plaintiff faults the ALJ for not believing his subjective statements about the degree of limitation imposed by agoraphobia (Id.). Finally, Plaintiff argues the ALJ failed to follow the treating physician rule because he did not give controlling weight to Dr. Kramer's diagnosis of agoraphobia (Id.).

Contrary to Plaintiff's assertion, the ALJ did consider Plaintiff's testimony about not having health insurance and being unable to afford ongoing medical treatment (Tr. 18, 19). The ALJ also questioned Plaintiff extensively about his treatment options and his ability to afford medications and visits to doctors (Tr. 38-40, 43-45, 51). The ALJ found the credibility of Plaintiff's testimony, about the inability to pay for medical care, was undermined by his recent chiropractic treatment which suggested some ability to seek care when Plaintiff felt it necessary (Tr. 19). Further, the ALJ believed Plaintiff's testimony was weakened by his inability to identify the cost of treatment he sought from behavioral health providers (Tr. 19). Additionally, the ALJ noted that at least one of Plaintiff's past medications was on a list of $4.00 medications at Wal-Mart, yet Plaintiff discontinued the medication for unexplained reasons (Tr. 19). Moreover, the ALJ considered more than Plaintiff's lack of treatment in formulating his residual functional capacity assessment (Tr. 20). The ALJ considered the evidence as a whole and determined that the opinions of the state agency reviewing psychologists were entitled to "great" weight because they were supported by substantial evidence (Tr. 20). These evaluating psychologists concluded that Plaintiff was capable of performing simple tasks and instructions, could persist with such tasks

16

on a sustained basis, and had moderate limitations in his ability to interact with coworkers, supervisors, and the general public (Tr. 77-80, 92-95, 112-114, 128-130).

The undersigned has reviewed the administrative record and concludes the ALJ's findings regarding the weight accorded to the opinions of the non-examining state agency psychologists and the examining psychologist, Ms. Walpert, M.A., are supported by substantial evidence in the record and comport with applicable law. Gayheart v. Commissioner, 710 F.3d 365, 376 (6th Cir. 2013) (the Administrative Law Judge weighs the opinions from examining and non-examining sources "based on the examining relationship (or lack thereof), specialization, consistency, and supportability...") (citing 20 C.F.R. § 404.1527(c)(2)). Additionally, the treating physician rule applies to medical opinions addressing the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(a)(2) and (c)(2), 416.927(a)(2) and (c)(2); Gayheart, 710 F.3d at 375. Thus, contrary to Plaintiff's assertion, the treating physician rule does not apply to Dr. Kramer's diagnosis of agoraphobia. Moreover, a mere diagnosis of agoraphobia does not provide information about the severity of that condition. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("[t]he mere diagnosis of [an impairment] … says nothing about the severity of the condition"). In sum, the residual functional capacity findings of the ALJ are supported by substantial evidence in the record and fully comport with applicable law.

Next, Plaintiff disagrees with Finding No. 10 (DN 13, Memorandum at Pages 18-19; DN 14, Fact and Law Summary). This finding addresses the fifth step in the sequential evaluation process.

At the fifth step, the Commissioner has the burden of demonstrating there exist a significant number of jobs in the local, regional and national economies that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience.

17

20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Here, Plaintiff's residual functional capacity did not coincide with all the criteria of a particular Grid Rule because he suffers from non-exertional limitations (Tr. 17, 21-22). Therefore, the ALJ appropriately used the Grid Rules as a framework in the decision making process and made a non-guideline determination based on the testimony of a vocational expert (Tr. 21-22). 20 C.F.R. §§ 404.1566(e), 416.966(e); Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). The vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that Plaintiff is capable of performing a significant number of jobs existing in the national economies because the vocational expert's testimony is based on a hypothetical question that accurately portrays Plaintiff's physical and mental impairments (Tr. 21-22, 64-65). Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Bradford v. Sec'y, Dep't. of Health & Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam). Additionally, there is no requirement that the ALJ's hypothetical question to the vocational expert reflect Plaintiff's unsubstantiated complaints. Hardaway v. Sec'y of Health & Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam). In sum, Finding No. 10 is supported by substantial evidence in the record and comports with applicable law.

Finally, Plaintiff disagrees with Finding No. 11 (DN 14, Fact and Law Summary). The undersigned has reviewed the record and concludes that Finding No. 11 is supported by substantial

evidence in the record and comports with applicable law. In sum, the Commissioner's findings are supported by substantial evidence in the administrative record and they comport with applicable law.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

This is a final and appealable Order and there is no just cause for delay.

Copies:     Counsel